NO. 3054

Opinion construing Article 2997a, and holding:

1. Shoup Voting Machine, upon examination, held to comply with the requirements of Section 2 and Section 18 of Article 2997a, which Article sets forth requirements of voting machines in Texas.

2. Opinion expressly conditioned and made subject to findings of three examiners as provided for in Section 1 of Article 2997a.

OFFICE OF THE ATTORNEY GENERAL

June 1, 1939

Honorable Claude A. Williams
Assistant Secretary of State
Austin, Texas

Dear Mr. Williams:

Opinion No. O-748
Re: Whether or not Shoup Voting Machine complies with Section 2 and Section 18 of Article 2997a, R.C.S.

This is in reply to your letter of May 5, 1939, in which you request the opinion of this Department upon the question of whether or not the Shoup Voting Machine complies with the requirements of Sections 2 and 18 of Article 2997a of Vernon's Annotated Civil Statutes of Texas, which Article is Chapter 33 of the Acts of the Fourth Called Session of the 41st Legislature, as amended by Chapter 52 of the Acts of the Second Called Session of the 45th Legislature.

We quote the following portions of your letter:

"I desire an opinion from your Department as to whether or not the Shoup Voting Machine complies with Article 2997a, Section 2, of the Revised Civil Statutes of Texas, 1925. I also desire to know if the provisions of section 18, Article 2997a, of the Revised Civil Statutes of Texas, 1925, would prevent his machine being used in Texas under the definition of "public and protective counters" in Section 25 of Article 2997a.

"For your convenience, attached are photographs of the Shoup Voting Machine."

You are advised that in compliance with your request, Mr. Armstrong and Mr. Fanning of this Department inspected the Shoup Voting Machine in the City of Austin, Texas, on May 5, 1939.

Before answering the specific inquiry contained in your letter of May 5, 1939, we desire to call your attention to Section 1 of Article 2997a, which provides as follows:

"Providing for Examination and Approval of Voting Machines by the Secretary of State. Any person, firm or corporation owning or controlling any voting machine and desiring to have the same adopted for use in the State of Texas, may apply to the Secretary of State to have such machine examined. Before the examination the applicant shall pay to the Secretary of State the sum of four hundred fifty ($450.00) dollars. The Secretary of

State shall cause said machine to be examined as here-
inafter provided and shall make and file and keep on
file in the office of the Secretary of State a report
of such examination, which shall show whether the kind
of machine so examined can safely be used by the voters
at an election or primary election, under the conditions
hereinafter provided. If the report states that the
machine can be so used, it shall be deemed approved,
and machines of its kind may be adopted for use at
elections and primary elections as herein provided.
Before making and filing such report, the Secretary of
State shall require such voting machine to be examined
by three examiners to be appointed by the Secretary of
State for such purpose, one of whom shall be an expert
in patent law, and the other two mechanical experts, and
shall require of them a written report on such machine,
and which reports shall be attached to the Secretary
of State's report and be kept on file. Each examiner
shall receive the sum of one hundred and fifty ($150)
dollars as his compensation and expenses in making an
examination and report as to each voting machine examin-
ed by him. Neither the Secretary of State nor any ex-
aminer shall have any pecuniary interest in any voting
machine. When the machine has been approved, any im-
provement or change that does not impair its accuracy,
efficiency or capacity, shall not make necessary a re-
examination or re-approval thereof. Any form of voting
machine not approved as herein set out, or which has
not been examined by voting machine examiners and re-
ported on pursuant to law and its use specifically auth-
orized by law, cannot be used at any election or
primary election in the State of Texas."

By virtue of the quoted provisions of Section 1 of the Act,
it is made the duty of the Secretary of State to have the machine
in question examined by three examiners, one of whom shall be
an expert in patent law and the other two mechanical experts,
who shall make a written report to the Secretary of State.
Because of the provisions of Section 1 of the Act, we believe
the Legislature plainly contemplated and intended that the Sec-
retary of State's action in approving or disapproving a particular
voting machine should be largely governed and controlled by the
examination and report of the examiners provided for in the law.
In such view of the Statute, our opinion on the matter is made
entirely advisory and is subject to the findings and report of
the examiners provided for in the statute. That is to say, if
the examiners, after an examination, should find and report
that the Shoup Voting Machine does not meet the requirements
set out in Article 2997a, and if such findings and report are
approved by the Secretary of State, our opinion will be con-
trolled by the facts found by the expert examiners.

The inspection we have made of the Shoup Voting Machine
reveals that such machine contains two counters. One of such
counters is located on the outside of the machine in a position
where it will be visible to and in full view of the election
officials while the voter is voting. Such counter, we are
informed, records the total number of movements of the operating
lever and such counter cannot be re-set. We are further
informed, and this opinion is conditioned upon the verity of
such information, that the operating lever, the movements of
which are recorded by the outside counter, can only be moved
when a vote is cast in an election. In short, we are advised
that the movements of the operating lever on the machine are
identical in number with the votes cast on the machine.

On the inside of the machine is found what is termed a "daily voter counter," which counter, we are informed, records only the number of votes cast on the machine during a particular election. This counter can be reset. It is so placed that it will not be in full view of the election officials while the voter is voting, for the reason that the curtains of the voting machine automatically close around a voter while he is voting, thereby obstructing the full view of the election officials.

Section 2 of Article 2997a reads as follows:

"A voting machine approved by the Secretary of State must be so constructed as to provide facilities for voting for such candidates as may be legally placed on a ballot in the State of Texas. It must also permit a voter in a general election to vote for any person for any office, whether or not nominated as a candidate by any party but whose name is legally on the ballots as an independent candidate, and must permit voting in absolute secrecy. It also must be so constructed as to prevent voting for more than one person for the same office and at the same time preventing his voting for the same person twice. It must be provided with a lock or locks, by the use of which immediately after the polls are closed or the operation of such machine for such election or primary is completed, any movement of the voting or registering mechanism is absolutely prevented. Such machine shall be equipped with one or more protective counters."

Section 18 of Article 2997a reads, in part, as follows:

"Canvass of the Vote and the Proclamation of the Result. As soon as the polls are closed, officials thereat shall immediately lock the machine against voting. They then shall sign a certificate stating that the machine was locked and sealed, giving the exact time; such certificate giving the number of voters shown on the public counters, which shall be the total number of votes cast on such machine in that precinct; the number on the seal; the number registered on the protective counter. (This also shall be the procedure at the close of absentee voting when the machines are used for absentee voting prior to election day.) They then shall open the counting compartment in the presence of watchers, and at least one representative of any newspaper or press association which cares to be represented, giving full view of all the counter numbers. The presiding officer shall under the scrutiny of the watchers, in the order of the offices as their titles are arranged on the machine, read and announce in distinct tones the designating number and letter on each counter for each candidate's name, and the result as shown by the counter numbers, and shall then read the votes ..."

Section 25 of Article 2997a contains definitions of terms used in the Act. The term "protective counter" and "public counter" are defined as follows:

"The term 'protective counter' means a separate counter built into the machine which cannot be reset, and which records the total number of movements of the operating lever."

"The term 'public counter' means a device in full view of the election officials while the voter is voting which records only the number of votes cast on the machine."

Section 2 of the Act, which sets out the requirements of voting machines, does not require that the voting machines have a "public

counter." Said section does require that a voting machine have one or more "protective counters." The outside counter which we find on the Shoup Voting Machine clearly meets all of the requirements of a "protective counter" as defined in Section 25 of the Act. In our opinion, such outside counter also complies with all of the requirements contained in the definition of a "public counter" as set forth in section 25 of the Act. The outside counter on the Shoup Voting Machine is a device "in full view of the election official while the voter is voting" and such counter, according to our information, "records only the number of votes cast on the machine." We are, therefore, of the opinion that the outside counter on the Shoup Voting Machine is not only a "protective counter" but is also a "public counter" within the meaning of the Act.

Your request for an opinion raises the question as to whether the requirements of Section 18 of the Act do not, by necessary implication, require a voting machine to have attached to it in full view of the election official, a counter which can be set at zero at the beginning of a particular election and which will record only the exact number of votes cast at a particular election. The particular language in Section 18 which raises this question is the requirement that the officials at an election shall file a certificate at the conclusion of the election, "such certificate giving the number of voters shown on the public counters, which shall be the total number of votes cast on such machine in that precinct..."

After a careful consideration, we have come to the conclusion that the above quoted language in Section 18 of the Act does not expressly, nor by necessary implication, require that the outside counter on a voting machine be a device that can be reset at zero at the beginning of the election. It is our opinion that a counter device which otherwise meets all the requirements of the law, but which cannot be reset at zero at the beginning of each election, and which records only the number of votes cast on the machine, will enable election officials to comply fully with the law in making the certificate required by Section 18. By a simple process of subtraction the judges can ascertain the exact number of votes cast on a particular machine in an election as shown by the outside counter. The certificate is required to show the "total number of votes cast on such machine in that precinct." By a process of subtraction that number can be arrived at by the election officials and the result of the subtraction is the number, in our opinion, which is required to be inserted in the certificate.

Other sections of the Act operate as safeguards of the accuracy and surety of the election count, by requiring that a permanent record be kept of the figures shown on the counters of each machine. In addition, the Shoup Voting Machine also contains a counting device which is located on the face of the machine and which records only the number of votes cast in a particular election. This device, naturally, will operate as a further safeguard and check upon election officials.

Accordingly, you are advised that, in our opinion, the Shoup Voting Machine complies with Section 2 of Article 2997a, Revised Civil Statutes of Texas, 1925, and also with Section 18 of the same Statute. In answer to your second question, you are advised that we find nothing in Section 18 of Article 2997a which will prevent the Shoup Voting Machine from being used in Texas under the definition of "public and protective counters" as used in Section 25 of that Act.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By    (signed)
Robert E. Kepke
Assistant

REK:BT

This opinion has been considered in conference, approved, and ordered recorded.